IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:10CV328-RLV-DSC

| | |
|---|---|
| WILLIAM A. PACK,<br>      Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br>      Defendant. | )<br>)<br>)<br>)  **MEMORANDUM AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #9) and "Memorandum ... in Support ..." (document #10), both filed December 13, 2010; and the Defendant's "Motion for Judgment on the Pleadings" (document #13) and "Memorandum in Support ... " (document #13-1), both filed February 16, 2011. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that Defendant's decision to deny Plaintiff Social Security disability benefits is <u>not</u> supported by substantial evidence. Accordingly, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>granted</u>; that Defendant's Motion for Judgment on the Pleadings be <u>denied</u>; that the Commissioner's decision be <u>reversed</u>, and that this matter be <u>remanded</u> for further proceedings consistent with this Memorandum and Recommendation.

### I. PROCEDURAL HISTORY

Plaintiff received Supplemental Security Income benefits ("SSI") beginning sometime in

1981 when he was a minor. Defendant terminated those benefits in 2007 because income earned by Plaintiff's wife made him ineligible.[1]

On September 17, 2007, Plaintiff reapplied for SSI. Plaintiff's claim was denied initially and on reconsideration.

Plaintiff timely requested a hearing, which was held on August 25, 2009. On February 9, 2010, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's claim; finding that Plaintiff had never engaged in substantial gainful activity; that Plaintiff suffered from "back and leg problems and diabetic neuropathy," which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1; that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to "perform the full range of light[3] work"; and that considering Plaintiff's RFC, age, education and work experience, Medical-Vocational Rule 202.17 mandated a finding of not disabled.

Plaintiff filed a timely Request for Review of Hearing Decision. On July 8, 2010, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision

---

[1] It is undisputed that Plaintiff and his wife were divorced in January or February 2008.

[2] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

of the Commissioner.

Plaintiff filed this action on July 21, 2010. On appeal, Plaintiff contends that the ALJ erred in giving less than controlling weight to the opinion of his treating family physician, Dr. Francis Sido; in treating Plaintiff's testimony as "unreliable and unpersuasive"; and in using the generalized term "back and leg problems" to describe a severe impairment. Plaintiff argues that these errors contributed to the ALJ's failure to properly formulate Plaintiff's RFC. See Plaintiff's "Memorandum ... in Support ..." (document #10). The parties' cross dispositive Motions are ripe for disposition.

## II. FACTUAL BACKGROUND

Relevant to the dispositive issue raised on appeal, the undisputed medical records show that Dr. Sido treated Plaintiff for diabetes mellitus, back pain, diabetic neuropathy, spinal stenosis, peripheral arterial disease, GERD, anxiety, and gout. Dr. Sido's treatment records show that Plaintiff regularly complained about back, leg, hand and wrist pain. In particular, Dr. Sido documented complaints from Plaintiff on the following dates: September 10, 2007- back spasms; January 22, 2008 - back injury; January 28, 2008- radicular symptoms including right leg numbness; April 16, 2008- back pain; June 6, 2008- back pain; September 11, 2008- chronic back pain and pain in wrists; November 19, 2008 - weakness and pain in both legs; and January 16, 2009 - pain in legs. (Tr. 245, 257-58, 260, 499, 500, 502-03, 497.)

On January 23, 2008, Dr. Sido ordered an MRI of Plaintiff's lumbar spine, which identified a right paracentral disc herniation at L2-L3 with large disc extrusion behind the L3 vertebra. In addition, this MRI showed degenerative disc and facet disease producing moderate spinal canal stenosis at L3-L4 and L4-L5. (Tr. 395.)

Throughout the relevant period of time, Dr. Sido prescribed Omeprazole, Metoclopramide,

3

Zoloft, Trico, Albuterol, Norvasc, Ambien, Glucophage, Allopurinol and Advair for Plaintiff. (Tr. 252.) In addition, Dr. Sido prescribed Vicoprofin, Darvocet and Lyrica to treat Plaintiff's pain. (Tr. 498.) Dr. Sido referred Plaintiff to surgeon Steven K. Gudeman, M.D. and pain management specialist Herman Gore, M.D.

Plaintiff complained to Dr. Gore of extreme back, leg and wrist pain throughout the period of time at issue. On multiple office visits including January 25, 2008, February 18, 2008, April 2, 2008, June 2, 2008, August 27, 2008, September 30, 2008 and February 11, 2009, Plaintiff told Dr.Gore that his pain was a throbbing, aching, burning pain that radiated down his leg. (Tr. 467, 473-75, 481, 483, 485-87, 489, 493-95.)

Dr. Gore ordered a nerve conduction study on Plaintiff's lower extremities. This was performed on March 6, 2008 and revealed "a diffuse sensori-motor polyneuropathy... affecting both sensory and motor nerves." (Tr. 485-87.) The study also showed chronic L3/4 radiculopathy on the right and L4/5 radiculopathy on the left of Plaintiff's back. Id.

Based on his examination of Plaintiff, Dr. Gore diagnosed lumbar radiculopathy, lumbar disc herniation, peripheral neuropathy and carpal tunnel syndrome. Dr. Gore administered lumbar epidural steroid injections to Plaintiff on January 25, 2008, February 18, 2008, April 17, 2009, June 8, 2009 and June 29, 2009. (Tr. 489-91.)

On August 28, 2008, Dr. Gore also diagnosed Plaintiff with bilateral sensory motor neuropathy consistent with carpal tunnel syndrome based on an upper extremity nerve conduction study administered that day. (Tr. 472.) On September 3, 2008, Dr.Gore administered a bilateral wrist injection to Plaintiff. (Tr. 469-70.) Dr. Gore prescribed Lyrica and Darvocet for Plaintiff. (Tr. 468, 470, 474, 482-83, 488.)

On March 18, 2008, Dr. Gudeman performed a right L2-3 microdisectomy with excision of

an inferior migrated fragment. Although Plaintiff had some initial relief in his back and legs after surgery, Plaintiff's pain returned in an aggravated form, as reflected in Dr. Gudeman's treatment notes for May 1, 2008. (Tr. 402.)

On May 29, 2008, Dr. Gudeman recommended microdisectomy re-operation on the right L2-3 based on his diagnosis of recurrent disc herniation at L2-3. (Tr. 400-01.) On June 10, 2008, Dr. Gudeman performed a posterior lumbar decompression at L2-3 bilaterally with right L2-3 microdisectomy and left L2-3 decompression and exploration. (Tr. 399.)

On September 4, 2009, Dr. Sido completed a Functional Capacity Questionnaire (hereinafter "Dr. Sido's opinion"), in which he opined that, based on the above-mentioned impairments, Plaintiff could stand only one half hour in an eight hour work day; could walk only 100 meters in an eight hour work day; could sit continuously for no more than one half hour in an eight hour work day; could lift and carry no more than two pounds; could not concentrate or pay attention because his pain, fatigue and anxiety would "frequently" interfere; would have only a "poor ability to use his hands for pushing, pulling or writing;" would miss work more than three times per month; and would have difficulty performing a job even if he had a sit/stand option. (Tr. 527-30.)

At the hearing, Plaintiff testified that the pain he experiences in his back and legs is like "a balloon-blowed-up pressure and it goes around into the sides, down the buttocks and down the leg." (Tr. 43.) He explained that he feels this pain if he stands or sits too long in one position. Specifically, if he sits in one place for more than thirty minutes, it feels like his "hip bone's going up into the spine itself." (Tr. 48.) The pain in Plaintiff's back and legs causes him to spend two to three days per week in bed with his TENS unit and an ice pack. (Tr. 39-40.) Plaintiff's arms and hands usually feel "heavy-like" and ache. In addition, they constantly tingle. (Tr. 65.)

Plaintiff testified that he has lived with his mother and, for some period of the time, his wife

also has lived with him and his mother. (Tr. 12.) The two women do everything for Plaintiff, who testified that he is unable to perform any chores around the house other than to sweep the kitchen floor. (Tr. 50.) Plaintiff testified that he spends most of his time watching television, talking to a neighbor or hanging out with neighborhood dogs. (Tr. 55.) Plaintiff testified that he required assistance to bathe and dress himself because he cannot reach his lower extremities. (Tr. 58.) Plaintiff qualified his testimony regarding his inability to dress himself, stating that when his wife was not living with him, he used a pair of "clamp things" to put his pants on. He described this as a very slow process in which he would "sit on the edge of the bed and work his foot in there very slowly and work it up to the knees." (Tr. 58.)

An affidavit by Plaintiff's wife, Mary Pack, corroborated his testimony that she assisted him with dressing as well as other daily activities. (Tr. 203.)

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v.

6

Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to reconsider the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[4] As an initial matter, Plaintiff assigns error to the ALJ's decision to disregard Dr. Sido's opinion. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
  inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

7

(4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

The ALJ concluded that Dr. Sido's opinions regarding the severity of Plaintiff's impairments and pain were undermined by the following medical records: (1) a record dated April 15, 2009 from Dr. Gore, which, according to the ALJ, indicated that Plaintiff's "low back pain was tolerable," (2) a June 29, 2009 record from Dr. Gore showing "significant improvement of the pain in [Plaintiff's] legs with previous injections;" and, (3) a record dated August 7, 2008 from Dr. Gudeman reflecting Plaintiff's statement that his back pain was down to a four out of ten. (Tr. 88.)

Plaintiff concedes that Dr. Gudeman's August 7, 2008 note contradicts Dr. Sido's opinion. As Plaintiff points out in his brief, however, when examined in more detail, neither Dr. Gore's April 15, 2009 record nor his June 29, 2009 record undermines Dr. Sido's opinion. In fact, on April 15, 2009, Dr. Gore's examination of Plaintiff revealed:

> [P]ain on palpitation over the cervical paraspinals, intrascapular region and trapezius muscles as well as the great occipital nerve region. Spurling's maneuver reveals pain at the base of the neck...[P]ain in the lower back with [straight leg raise maneuver]; [P]ain on palpatation over the PSIS juncture, SI joint, sciatic notch region and lumbosacral paraspinals.... [Mr. Pack] has difficulty going from sitting to standing secondary to pain.

(Tr. 462-63.) Based on this examination, Dr. Gore recommended that Plaintiff continue with his prescribed Darvocet and Lyrica and undergo a series of lumbar steroid injections. Id.

8

As for Dr. Gore's June 29, 2009 record, he wrote that although Plaintiff reported a "significant[] improve[ment]" in his leg pain following the June 8, 2009 lumbar steroid injection, Plaintiff's overall improvement in his back pain level was only 20%, and further, that 20% relief lasted only one week after the injection. (Tr. 456-57.) Dr. Gore proceeded to administer another lumbar epidural steroid injection to Plaintiff on June 29, 2009--only twenty-one days after the previous injection. Id.

The ALJ mis-characterizes Plaintiff's course of treatment as "conservative." (Tr. 87). The ALJ went so far as to suggest that there is a factual dispute as to whether Dr. Gudeman performed two back surgeries on Plaintiff – inaccurately describing this evidence as appearing in the record only "according to the Plaintiff['s]" testimony. Id.

Although Defendant invites the Court to consider these factual errors "harmless," the ALJ clearly had the responsibility for developing the medical record. Whether the ALJ would have considered Plaintiff's apparent experience of relief on August 7, 2008 sufficient to discredit Dr. Sido's opinion is not before the Court. As discussed above, it is not the place of a reviewing court to reconsider the evidence or engage in its own speculation concerning medical evidence. See Hays, 907 F.2d at 1456.

Similarly, the ALJ erroneously found that there was a contradiction between Plaintiff's testimony and his wife's affidavit regarding Plaintiff's ability to dress himself. Although Plaintiff clearly stated that his wife helped him dress and that he only used a device to pull on his pants when his wife was not living with him, the ALJ concluded that "the [Plaintiff] contradicted his wife's statement when he testified that he used a device to put his pants on." (Tr. 87.) The ALJ then reached the broader conclusion that "these activities lead me to believe [Plaintiff] has greater exertional abilities than he admits to." Id. These findings, along with the ALJ's treatment of the

9

medical records, discussed above, formed the basis for his conclusion that Plaintiff's testimony was not credible. As with the ALJ's treatment of Dr. Sido's opinion, it is not for the Court to reconsider the evidence and determine whether the ALJ would have found Plaintiff believable absent the issue concerning his ability to dress himself.

The Plaintiff also assigns error to the ALJ's use of "back and leg problems" to describe one or more of his severe impairments, but cites no authority in support. Defendant contends that the error is, at most, harmless where the ALJ found that Plaintiff had established the existence of one or more severe impairments and moved on to consider Plaintiff's RFC. Because the errors discussed above concerning the ALJ's evaluation of the medical records and Plaintiff's credibility warrant remand, it is not necessary for the Court to resolve this assignment of error. The Court notes, however, that where specific diagnoses (lumbar disc herniation, lumbar disc radiculopathy) are established by the medical record, the better and more common practice is to utilize those terms in articulating a claimant's severe impairments.

Accordingly, having failed to consider adequately the medical record and Plaintiff's credibility, the ALJ's findings that Plaintiff could perform a full range of light work and that there were therefore a significant number of jobs in the national economy that Plaintiff could perform are not supported by substantial evidence. At the next hearing, among any other issues, the ALJ should more fully develop the medical record and resolve the inconsistencies discussed above.

## IV. <u>RECOMMENDATIONS</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion For Summary Judgment" (document #9) be **GRANTED**; that Defendant's "Motion for Judgment on the Pleadings" (document #13) be **DENIED**; that the Commissioner's

decision be **REVERSED**; and this matter be **REMANDED** for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g).[5]

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Richard L. Voorhees.

---

[5] Sentence Four authorizes "a judgment affirming, modifying, or reversing the decision ... with or without remanding the cause for a rehearing." Sullivan v. Finkelstein, 496 U.S. 617, 625 (1990).

**SO RECOMMENDED AND ORDERED**.

Signed: February 24, 2011

David S. Cayer
United States Magistrate Judge